Filed 1/9/23 P. v. Rojas CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY RAY ROJAS,<br><br>Defendant and Appellant. | F083091<br><br>(Super. Ct. No. PCF408940)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County. Juliet L. Boccone, Judge.

Gillian Black, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Smith, Acting P. J., Meehan, J. and DeSantos, J.

Defendant Anthony Ray Rojas contends on appeal that (1) his case must be reversed and remanded because the evidence is insufficient to support the special allegation of premeditation and deliberation in count 1, attempted murder; (2) his sentence must be vacated and his case remanded for resentencing in light of Senate Bill No. 567's (2021–2022 Reg. Sess.) (Senate Bill 567) amendments to Penal Code section 1170, subdivision (b);[1] and (3) the court must exercise its discretion to strike or modify the section 12022.53 firearm enhancement in light of *People v. Tirado* (2022) 12 Cal.5th 688 and recent amendments to section 1385. We vacate and remand for resentencing in light of amended section 1170, subdivision (b). In all other respects, we affirm.

## PROCEDURAL SUMMARY

On March 9, 2021, the Tulare County District Attorney filed an information charging defendant with attempted premeditated murder (§§ 664/187, subd. (a); count 1) and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 2). As to count 1, the information alleged that defendant personally and intentionally discharged a firearm causing great bodily injury (§12022.53, subd. (d)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally used a firearm (§12022.53, subd. (b)).

On June 7, 2021, the jury found defendant guilty on counts 1 and 2, and found the personal use of a firearm causing great bodily injury allegation (§ 12022.53, subd. (d)) true.

On July 16, 2021, the trial court sentenced defendant to an aggregate term of 32 years to life plus three years in state prison, as follows: an indeterminate term of seven years to life for count 1 (attempted premeditated murder), plus 25 years to life for

---

[1] All statutory references are to the Penal Code.

2.

the section 12022.53, subdivision (d) enhancement, and three years (the upper term) for count 2 (felon in possession of a firearm), stayed.

On July 20, 2021, defendant filed a notice of appeal.

## FACTS

### *The Prosecution*

Gabriel and defendant were both ex-boyfriends of Samantha. Samantha testified that defendant did not know Gabriel, and Gabriel also denied knowing defendant.

On December 9, 2020, Samantha brought defendant to her house.[2] When defendant arrived, he was carrying a red duffle bag and was wearing a San Francisco 49ers beanie, a hoodie with a Champion logo on the front, and white shoes with black tips. After arriving at Samantha's house, defendant walked out of the house and retrieved something from the front passenger seat area of Samantha's car. As he walked back to the house, he appeared to be "fixing" something in his right pocket and then covering it up with his shirt.

Approximately an hour later, Gabriel rode his bicycle past Samantha's house, calling her a " 'whore' " as he rode by, before circling back to ride by again. Samantha walked down her driveway and told Gabriel not to pass by her house or say disrespectful things to her. Gabriel told her that he could say anything he wanted from the street. Samantha told him to stay off her driveway and out of her way.

Gabriel then rode his bicycle up to Samantha's front porch, where the two began to argue. Samantha and Gabriel "got pretty loud" during the argument, while the front door to the house was open. Gabriel pushed Samantha hard into the front door, then threw or dropped a beer bottle he was holding in his right hand onto the ground,

---

[2] The events that occurred were captured by video surveillance cameras on Samantha's house.

shattering it, and he left on his bicycle. During the argument, defendant and Samantha's two younger siblings were inside the house.

Approximately 30 seconds after Gabriel rode away, defendant came out of the house. The video surveillance footage from the camera over the garage showed defendant emerge from the house and suddenly run around the corner of the house. Samantha yelled at defendant and followed him, screaming, " 'Stop. The kids are here. There's kids in the house.' " When defendant briefly reemerged into the view of the surveillance camera, he was holding something in his right hand. The surveillance video then switched to the view of the street, showing Gabriel fall off his bicycle. Defendant could be seen near the house, with his arm raised in front of him with something in his hand, while Gabriel was in the street on his bicycle. As Gabriel rode his bicycle away from the house, he suddenly fell when a bullet fired by defendant hit him in the neck. While Gabriel was on the ground, the video showed a brief puff of dust rise from the ground near him as defendant fired at least one more round at him. The video then showed defendant walk back to the front porch and inside the house holding the gun. Gabriel then got back on his bicycle and rode home.

A few minutes later, Samantha told her aunt, who was also her neighbor, about the shooting, and her aunt called the police. Samantha heard someone inside her house say, " 'Let's leave or I'm going to shoot your aunt and you.' " She stated she was not sure if defendant was the person who said it. The only other people inside her house were her two younger siblings. Samantha left the house with defendant and drove him to Bakersfield because she was afraid of him and did not want him to harm anyone else.

Gabriel testified that initially after being shot he did not feel any pain, but saw some blood. After he got home, his mother drove him to the hospital, where he received pain medication, and after being transferred to another hospital, he underwent surgery on the bullet wound to his neck.

At the scene of the shooting, police found blood and fragments from three different bullets. No firearms were located at or near Samantha's residence.

Both Samantha and detective Jose Melendez of the Tulare County Sheriff's Office, who was investigating the case, identified the item defendant was holding in his right hand when he reemerged from around the corner of the house before shooting at Gabriel in the surveillance video as a revolver, consistent with the lack of casings at the scene.

Defendant was arrested on February 10, 2021, in Madera. When defendant was arrested, he was wearing the same shoes as seen on the surveillance video on the day of the shooting. During a subsequent search of defendant's home, police found a red and tan duffel bag and a San Francisco 49ers beanie consistent with how defendant was seen on the video surveillance footage from Samantha's house on the day of the shooting.

Two months after the incident, Samantha identified the male in the surveillance video as defendant. The identification was corroborated by officer Staci McCormick, a police officer working in Fresno and Madera counties, who arrested defendant.

### *The Defense*

Samantha's house had one camera taking surveillance video covering the front door. There were no cameras positioned to capture someone entering or leaving through the garage door or the back door of the house.

The defense called a neighbor, Nicholas F., who testified that he was a percipient witness to the shooting at Samantha's house. He testified that on December 9, 2020, he saw a woman standing on the sidewalk holding a gun and shooting at a man on a bicycle in the road. He described the woman as an average-sized "Hispanic" woman wearing pink pajama bottoms but stated he would not be able to identify the woman if he saw her again. He testified that Samantha did not appear to be the woman who he saw shoot the man on the bicycle. He stated that he did not see defendant at the time of the shooting. He recognized Gabriel in the video surveillance footage as the man he saw being shot as

5.

he was lying in the street but testified the woman who he had seen shooting Gabriel was not in the video.

## DISCUSSION

**I.      Sufficiency of Evidence**

Defendant contends there was insufficient evidence to support the jury's finding that the attempted murder was premeditated and deliberate.  We disagree.

### A.      *Law*

Evidence is sufficient when, upon reviewing the entire record in the light most favorable to the judgment of conviction, substantial evidence is shown so that a reasonable trier of fact could find the necessary elements of the crime beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  Substantial evidence is "reasonable, credible, and of solid value." (*Johnson*, at p. 578.)  The reviewing court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)  The reviewing court must not reweigh the evidence. (*People v. Culver* (1973) 10 Cal.3d 542, 548.)  Nor may the reviewing court reassess the credibility of the witnesses or resolve factual conflicts, as these tasks are reserved for the trier of fact. (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367.)  "Where the circumstances support the trier of fact's finding of guilt, an appellate court cannot reverse merely because it believes the evidence is reasonably reconciled with the defendant's innocence." (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1747.)  This standard of review is applicable regardless of whether the prosecution relies primarily on direct or on circumstantial evidence. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1125.)

"A verdict of deliberate and premeditated [attempted] murder requires more than a showing of intent to kill.…" (*People v. Young* (2005) 34 Cal.4th 1149, 1182, quoting *People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  In this regard, " '[d]eliberation' refers

6.

to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance." (*Koontz*, *supra*, at p. 1080, quoting *People v. Bender* (1945) 27 Cal.2d 164, 183.) "The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly ….' " (*People v. Mayfield* (1997) 14 Cal.4th 668, 767, quoting *People v. Thomas* (1945) 25 Cal.2d 880, 900.)

Courts do not differentiate between completed first degree murder and attempted first degree murder for purposes of determining if there is sufficient evidence of premeditation and deliberation. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8.) The pertinent question as to whether there is sufficient evidence of premeditation and deliberation is whether any rational trier of fact could have found the necessary reflection and weighing of considerations. (*People v. Caro* (1988) 46 Cal.3d 1035, 1050–1051, disapproved on other grounds in *People v. Bonillas* (1989) 48 Cal.3d 757, 797–798, as stated in *People v. Whitt* (1990) 51 Cal.3d 620, 657, fn. 29; see *People v. Johnson*, *supra*, 26 Cal.3d at p. 576.)

In determining whether evidence is sufficient to support a finding that a killing was willful, deliberate, and premeditated, reviewing courts generally consider three types of evidence: prior planning, motive, and the manner of killing. (*People v. Anderson* (1968) 70 Cal.2d 15, 26–27 (*Anderson*); *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1223–1224.) Such evidence need not be present in some special combination or be accorded a particular weight, nor is the list exhaustive. (*People v. Pride* (1992) 2 Cal.4th 1117, 1125.) In other words, "[u]nreflective reliance on *Anderson* for a definition of premeditation is inappropriate. The *Anderson* analysis was intended as a framework to assist reviewing courts in assessing whether the evidence supports an inference that the killing resulted from preexisting reflection and weighing of considerations. It did not … alter the substantive law of murder in any way." (*People v. Thomas* (1992) 2 Cal.4th

7.

489, 517; accord, *People v. Gonzalez and Soliz* (2011) 52 Cal.4th 254, 294–295.) The issue on appeal is simply whether a jury reasonably could determine the killing resulted from preexisting reflection, rather than an unconsidered or rash impulse. (*People v. Hughes* (2002) 27 Cal.4th 287, 370–371.)

### B.    Analysis

Here, there was sufficient evidence of the planning, motive, and manner of the attempted murder for the jury to find defendant's conduct was premeditated and deliberate.

First, defendant contends there is no evidence of planning because there was no evidence that defendant knew Gabriel would come to Samantha's house the day of the incident. Accordingly, he argues it is not reasonable to believe that defendant planned for an event that he had no way of knowing would occur. However, the evidence showed Samantha and Gabriel argued loudly in front of the house and Gabriel pushed Samantha hard against the front door while the front door to the house was open and defendant was inside. The evidence then showed that defendant came outside after Gabriel's beer bottle shattered. The evidence showed that when defendant saw Gabriel riding away on his bicycle, defendant suddenly ran around the corner of the house and returned with the gun, shooting at him multiple times as he was riding away, the first shot hitting Gabriel in the neck and making him fall off his bicycle and the other shots fired after he was on the ground. Based on this evidence, a rational jury could find that defendant "rapidly and coldly" formed the plan to shoot and kill Gabriel when he saw him riding away after hearing Samantha and Gabriel arguing. (*People v. Brady* (2010) 50 Cal.4th at 547, 563–564; *People v. San Nicolas* (2004) 34 Cal.4th 614, 658 ["Defendant stated that he saw [the victim's] reflection in the bathroom mirror before turning around and stabbing her. The act of planning—involving deliberation and premeditation—requires nothing more than a 'successive thought[ ] of the mind.' "]; *People v. Hernandez* (1988) 47 Cal.3d 315,

350 [affirming premeditated murder conviction even though evidence of planning was "slim" and the time for reflection was "slight"].)

Second, defendant contends the record is not clear as to whether defendant and Gabriel knew of each other's relationships with Samantha, weakening the evidence of jealousy as a motive. However, he concedes there was "some evidence presented at trial that [defendant] and [Gabriel] may have been romantic rivals, since both men had dated Samantha …, and may even have been doing so at the same time." Motive is demonstrated by "facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer" a reason to kill the victim. (*Anderson*, *supra*, 70 Cal.2d at p. 27.) "[T]he law does not require that a first degree murderer have a 'rational' motive for killing. Anger at the way the victim talked to him [citation] or any motive, 'shallow and distorted but, to the perpetrator, genuine' may be sufficient." (*People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102.) The defendant's motive for the killing need only be "plausible." (*People v. Pride*, *supra*, 3 Cal.4th at p. 247 ["At least two plausible motives for the slaying appear."]; *People v. Thomas*, *supra*, 2 Cal.4th at pp. 518–519 [evidence suggested plausible motive]; *People v. Lucero* (1988) 44 Cal.3d 1006, 1019 [same].) Here, the evidence shows that just before defendant came outside and shot Gabriel, Gabriel and Samantha were arguing outside on her front porch and Gabriel pushed her "hard" into the door. Samantha testified that defendant was inside the house at that time, but the front door was open and the argument "got pretty loud." Gabriel then dropped or threw his beer bottle, shattering it. The evidence suggests a plausible motive that defendant was angry that Gabriel had been loudly arguing with Samantha and pushed her into the door, and accordingly, formed the plan to retrieve the gun to kill Gabriel when he saw him riding away.

Third, defendant contends that the shooting occurred suddenly and was over quickly, making it inconsistent with premeditation and deliberation. The "manner of killing" refers to "facts about the nature of the killing from which the jury could infer that

the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason.' " (*Anderson*, *supra*, 70 Cal.2d at p. 27.) Here, the evidence shows defendant came out of Samantha's house and saw Gabriel riding away. When defendant saw Gabriel riding away, defendant suddenly ran around the corner of the house to retrieve the gun and began shooting at him. He shot Gabriel in his neck, a vital area of the body, without speaking to him, as he rode away from the house unarmed, and continued to shoot at him after he fell to the ground. Based on this evidence, the jury could reasonably conclude the manner in which defendant acted—retrieving a gun from the side of the house after realizing Gabriel was riding away, and continuing to shoot at the unarmed Gabriel after he fell to the ground—is consistent with premeditation and deliberation. (See *People v. Manriquez* (2005) 37 Cal.4th 547, 577 [sufficient evidence of premeditation when defendant fired several shots to the victim's head, neck, and chest areas soon after a verbal altercation]; *People v. Silva* (2001) 25 Cal.4th 345, 369 ["The manner of killing—multiple shotgun wounds inflicted on an unarmed and defenseless victim who posed no threat to defendant—is entirely consistent with a premeditated and deliberate murder."].)

Accordingly, the evidence of planning, motive, and manner of the shooting is sufficient to support the jury's finding that defendant's attempted murder of Gabriel was willful, deliberate, and premeditated.

## II. Senate Bill No. 567

Defendant contends that his sentence must be vacated and his case remanded for resentencing in light of Senate Bill 567's amendments to section 1170, subdivision (b). The People agree, as do we.

### A.    Background

On June 7, 2021, a jury convicted defendant of attempted premeditated murder (count 1) and being a felon in possession of a firearm (count 2).  It also found true a firearm enhancement allegation under section 12022.53, subdivision (d).

The probation officer's report listed several aggravating factors:  (1) "[t]he crime involved great violence, great bodily harm, the threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness";  (2) "[t]he defendant was armed with a weapon at the time of the commission of the crime";  (3) "[t]he defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission";  (4) "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism"; (5) "[t]he defendant engaged in violent conduct which indicates a serious danger to society";  (6) "[t]he defendant has served a prior prison term"; and (7) "[t]he defendant was on parole when the crime was committed."  The sole mitigating factor listed in the report was "defendant's prior performance on probation or parole was satisfactory."

The trial court imposed the upper term of three years on count 2, which was stayed pursuant to section 654.  When sentencing defendant on count 2, the trial court did not discuss any aggravating factors.

### B.    Law

On October 8, 2021, Senate Bill 567 was signed into law.  It amended the determinate sentencing law, section 1170, subdivision (b), which delineates the trial court's authority to impose one of three statutory terms of imprisonment, known as the lower, middle, or upper terms, by making the middle term the maximum sentence for a term of imprisonment, unless certain circumstances exist. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).)  Effective January 1, 2022, under the newly amended law, the trial court may impose an upper term sentence only where there are circumstances in aggravation, and the facts underlying all of the aggravating

circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or the trial court in a court trial. (*Ibid.*) However, under section 1170, subdivision (b)(3), the trial court, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Under amended section 1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

## C. Analysis

Senate Bill 567 went into effect on January 1, 2022. Absent evidence to the contrary, the Legislature intends amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments are not yet final on the amendment's operative date. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307–308 [discussing *In re Estrada* (1965) 63 Cal.2d 740]; *People v. Brown* (2012) 54 Cal.4th 314, 323.) The "consideration of paramount importance" is whether the amendment lessens punishment. (*Estrada*, at p. 744.) If so, the "inevitable inference [is] that the Legislature must have intended that the new statute" apply retroactively. (*Estrada*, at p. 745.) As Senate Bill 567's amendments to section 1170, subdivision (b) lessen punishment, and there is no indication that the Legislature intended it to apply prospectively only, the new law must be retroactively applied. Therefore, the amendment to section 1170, subdivision (b) applies to all cases not final on Senate Bill 567's effective date. (*Estrada*, at pp. 745–746; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039, fn. omitted.)

As the parties agree, defendant's case was not final on January 1, 2022, and he was sentenced to the upper term on count 2 under former section 1170. We agree defendant is entitled to the benefit of Senate Bill 567.

Here, defendant's sentence to the upper term on count 2 by the trial court is not consistent with the requirements of Senate Bill 567's amendment to section 1170, subdivision (b)(5) because the record shows that the court did not state on the record any facts or reasons for choosing the sentence imposed.

Accordingly, we must vacate defendant's sentence and remand for resentencing in light of amended section 1170, subdivision (b). We express no opinion on how the trial court should rule.

## III.    Section 12022.53, Subdivision (d)

Defendant also contends that remand is necessary to allow the trial court to exercise its discretion to strike or modify the section 12022.53, subdivision (d) enhancement in light of *People v. Tirado*, *supra*, 12 Cal.5th 688 and recent amendments to section 1385. The People argue that defendant appears to have forfeited his *Tirado* claim by failing to ask the trial court to strike or reduce the enhancement below, but concede that any forfeiture claim is moot because the case must be remanded for resentencing in accordance with Senate Bill 567. We agree with the People.

When the matter is remanded, " 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Accordingly, as defendant's sentence is vacated and the matter remanded in light of amended section 1170, subdivision (b), any argument that defendant forfeited his *Tirado* claim is moot.

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing in light of amended section 1170, subdivision (b). In all other respects, we affirm.