[No. B004450. Second Dist., Div. Five. May 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE AGUSTIN LUNAFELIX, Defendant and Appellant.

**COUNSEL**

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Susan Lee Frierson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—By jury trial appellant was convicted of the first degree murder of Jesus Ramirez and of using a firearm in the commission of the offense. He was sentenced to state prison for 25 years to life plus 2 years for use of a firearm.

Viewing the evidence in the light most favorable to the judgment (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the murder was committed under the following circumstances: On the night of May 7, 1981, the victim entered a bar, the Pico Inn at 1427 West Pico. After ordering a drink he walked over to a pool table, where he had a two-minute conversation with appellant and one of appellant's two companions. The victim placed a quarter on the pool table, a customary indication that he desired to play the winner of the next game.

The victim then walked back to the bar. He did not appear angry. In fact, he mentioned something about "these friends" to prosecution witness Porfirio Ramirez, who had accompanied the victim to the bar.

As the victim sat back down at the bar, however, appellant's companion came over to the bar, grabbed the victim by the shirt or neck, and began shaking him. The victim was scared and attempted to retreat with his hands up. The victim was unarmed and nonthreatening.

Appellant came over, grabbed a barstool, and threw the barstool at the victim, knocking him to the floor. The victim, in a nonthreatening manner, started to get back up, half standing but holding onto the floor. Appellant pulled out a gun, a .38 caliber automatic. He pulled a cock or release on top of the weapon then shot the victim twice. The victim's body began to roll under a pool table. Appellant then shot the victim two more times. The four shots entered the upper chest, back, abdomen and thigh. Appellant shouted, "Let's go," and fled the bar with his two companions.

Appellant presented a defense of mistaken identity. Admitting his presence at the scene, he claimed that the prosecution witnesses were mistaken and that his companion, Sergio Verdugo, shot the victim. He claimed that when the victim, whom appellant had known several years, first approached appellant's group in the bar, Sergio Verdugo refused to acknowledge him. Appellant testified that he got up and went to the restroom, and that when he came out of the restroom he unexpectedly found Sergio Verdugo shooting the victim. Appellant's version was wholly contradicted by the prosecution evidence. The prosecution witnesses had no doubt whatsoever in identifying

appellant as the shooter. Their identification of appellant was further buttressed by the fact that prior to the shooting a photographer was circulating around the bar taking pictures. He took a photo of appellant and his two companions, which was found on the barroom floor immediately after the murder and which helped the witnesses identify the shooter to the police as soon as the police arrived.

■ Appellant's sole contention here is that his first degree murder conviction should be reduced to murder of the second degree on the ground the evidence is insufficient to establish that the killing was wilful, deliberate, and premeditated. (Pen. Code, § 189.) This contention is without merit. The jury was fully instructed on first and second degree murder. ■ The existence of deliberation and premeditation is a question of fact for the jury, whose determination must be upheld if there is substantial evidence to support it. ■ On appeal we must draw all inferences in support of the verdict that can reasonably be deduced from the evidence, and must uphold the judgment if, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People* v. *Romo* (1975) 47 Cal.App.3d 976, 986 [121 Cal.Rptr. 684]; *People* v. *Johnson, supra,* 26 Cal.3d at p. 576.) ■ Substantial evidence supports the verdict.

Recognizing "that the legislative classification of murder into two degrees would be meaningless if 'deliberation' and 'premeditation' were construed as requiring no more reflection than may be involved in the mere formation of a specific intent to kill," the Supreme Court in *People* v. *Anderson* (1968) 70 Cal.2d 15, 26 [73 Cal.Rptr. 550, 447 P.2d 942], attempted to clarify "the kind of evidence which is sufficient to sustain a finding of premeditation and deliberation."

After reviewing a number of its own decisions, the Supreme Court concluded: "The type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' (*People* v. *Thomas, supra,* 25 Cal.2d 880, at pp. 898, 900, 901 [156 P.2d 7]); (3) facts about the nature of the killing from which the jury

could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2). [¶] Analysis of the cases will show that this court sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*People* v. *Anderson, supra,* 70 Cal.2d at pp. 26-27, italics in original.)

More recently the Supreme Court has explained the purpose of these rules. In *People* v. *Velasquez* (1980) 26 Cal.3d 425, 435 [162 Cal.Rptr. 306, 606 P.2d 341], the court stated: "Numerous decisions have discussed and defined the concept of premeditation as it serves to distinguish first and second degree murder. A killing is deliberate, they explain, if the killer acted ' "as a result of careful thought and weighing of considerations; as a *deliberate* judgment or plan; carried on cooly and steadily, [especially] according to a preconceived design." ' [Citations.] 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly, but *the express requirement for a concurrence of deliberation and premeditation excludes . . . those homicides . . . which are the result of mere unconsidered or rash impulse hastily executed.*' " (Second italics added; deletions and first brackets in original.)

Contrary to appellant's contention, there is substantial evidence satisfying *Anderson* standards and justifying a reasonable conclusion by the jury that appellant murdered the victim coolly and steadily according to a preconceived design and not as the result of mere unconsidered or rash impulse hastily executed.

Prior to the killing, appellant and his companions engaged the victim in conversation for several minutes. Then the victim, in a calm and normal manner, without any apparent anger, turned around and walked back to the bar. After the victim conversed with Porfirio Ramirez and sat down at the bar, appellant and his companion pursued and attacked the victim. The victim was unarmed; he attempted to retreat with his hands up and he made no threats. Appellant picked up a barstool and threw it at the victim, knocking him to the floor. Appellant was armed with a .38 caliber handgun. Having disabled the victim by knocking him to the floor, and while the victim was still in this vulnerable position merely trying to get up, appellant cocked or released his gun, pointed it at the victim and began shooting. From these activities of appellant and his companion prior to the killing, the jury could reasonably infer appellant was acting pursuant to a precon-

ceived design. This whole course of conduct indicated a plan to pursue the victim, render him vulnerable, then shoot to kill him. Throughout the activities prior to the actual shooting, the victim was retreating and posing no threats. Nothing occurred from the time appellant left the pool table to give cause for appellant to pull a gun and shoot the victim. ■■ The utter lack of provocation by the victim is a strong factor supporting the conclusion that appellant's attack was deliberately and reflectively conceived in advance. (See *People* v. *Morris* (1959) 174 Cal.App.2d 193, 197 [344 P.2d 333]; *People* v. *Lewis* (1963) 217 Cal.App.2d 246, 259-260 [31 Cal.Rptr. 817].)

The manner of the killing (type (3) evidence) also supported the inference that appellant must have intentionally killed according to the preconceived design shown by the type (1) evidence. After having knocked the victim down to the floor with a barstool to render him vulnerable, and while the victim was merely trying to get up in a nonthreatening manner, appellant shot him. The victim was disabled by the first one or two shots and his body began to roll under a table. After a pause, appellant fired the third and fourth shots, which indicated appellant's intent to make sure the victim died. (See *People* v. *Watkins* (1967) 248 Cal.App.2d 603, 609 [56 Cal.Rptr. 734].) The manner of killing was not at all like a rash explosion of violence which might be committed on a victim who was advancing upon or provoking the defendant. (Cf. *People* v. *Holt* (1944) 25 Cal.2d 59, 92 [153 P.2d 21]; *People* v. *Caldwell* (1955) 43 Cal.2d 864, 870 [279 P.2d 539].) The evidence supports the conclusion that appellant first conceived a plan to pursue, disable, and shoot to kill the victim, then coolly and steadily carried out his plan.

Appellant had a prior relationship with the victim. Not only did they engage in conversation prior to the killing; the victim referred to "these friends" in a statement to Porfirio Ramirez, and appellant himself testified he had known the victim several years. Although the exact nature of their prior relationship and appellant's specific motive for the killing are not clear, it is clear appellant had a motive. There was no evidence suggesting provocation or a rash impulsive killing. ■■ Moreover, the law does not require that a first degree murderer have a "rational" motive for killing. Anger at the way the victim talked to him (*People* v. *Jackson* (1981) 121 Cal.App.3d 862, 873, 874 [176 Cal.Rptr. 166]) or any motive, "shallow and distorted but, to the perpetrator, genuine" may be sufficient (*People* v. *Smith* (1973) 33 Cal.App.3d 51, 66 [108 Cal.Rptr. 698]). A murderer may assume the motives of a close friend (*People* v. *Barker* (1979) 94 Cal.App.3d 321, 332-333 [156 Cal.Rptr. 407]). In any event the jury could reasonably infer from the type (1) and type (3) evidence that this murder

was not " 'the result of mere unconsidered or rash impulse hastily executed.' " (*People* v. *Velasquez, supra,* 26 Cal.3d at p. 435.)

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.