995 F.2d 231
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael Gene ELMORE, Petitioner-Appellant,
v.
B.J. BUNNELL, Warden, et al., Respondents-Appellees.
 No. 92-16269.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 25, 1993.*
Decided June 1, 1993.
 
 Before: HUG, WIGGINS, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Michael Gene Elmore (Elmore) appeals the district court's denial of his habeas petition. He is a California state prisoner convicted of first degree murder, three counts of forcible rape, three counts of lewd and lascivious conduct with a minor, one count of penetration with a foreign object and one count of false imprisonment. He is serving a forty-six year sentence.
 
 
 3
 Elmore challenges the constitutionality of his conviction contending that: (1) he was denied due process because the trial transcripts for several days of voir dire are missing and prosecutorial misconduct occurred during that period; (2) he was denied due process because the trial court issued improper jury instructions regarding voluntary intoxication and self-defense; and (3) there was insufficient evidence to support his first degree murder conviction.
 
 
 4
 The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253. We affirm.
 
 DISCUSSION
 
 5
 We review de novo the district court's denial of Elmore's petition for habeas corpus. Prantil v. State of Cal., 843 F.2d 314, 316 (9th Cir.), cert. denied, 488 U.S. 861 (1988).
 
 A. Prosecutorial Misconduct
 
 6
 Elmore's first contention is barred because he failed to raise this claim in the California appellate courts. See Engle v. Isaac, 456 U.S. 107, 129 (1982); see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977). "[W]hen a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice." Engle, 456 U.S. at 129.
 
 
 7
 On direct appeal, Elmore failed to assert his claim that prosecutorial misconduct occurred during several days of unrecorded voir dire. He argued only that there was a "potential" that reversible error occurred during the unrecorded voir dire. Because he failed to raise this claim on direct appeal, he cannot now assert it in the state court. In re Walker, 518 P.2d 1129, 1134 (Cal.1974) (defendant cannot raise claims in petition for habeas when they could have been, but were not, raised in timely appeal from conviction); see also In re Jackson, 835 P.2d 371, 375 n. 2 (Cal.1992). Therefore, absent cause and prejudice, Elmore is barred from raising his claim in this court. See Engle, 456 U.S. at 129.
 
 
 8
 The district court issued an order granting Elmore leave to demonstrate cause and prejudice. In his response, he argued that prejudice occurred because the prosecutor had mentioned his past criminal history. However, he failed to raise that claim on appeal to the state court. Indeed, Elmore conceded on direct appeal that he was unaware of any error occurring during the relevant portion of voir dire. Moreover, he has made no effort throughout the proceedings to reconstruct the record and has offered no excuse for his failure to do so. After reviewing his response, we agree with the district court that he has failed to establish the requisite "cause and prejudice."
 
 B. Improper Jury Instructions
 1. Self-Defense
 
 9
 Elmore argues that the state trial court erred because although it instructed the jury that an honest but unreasonable belief in the necessity to defend against imminent peril is a defense to murder, it failed to instruct the jury that such an honest but unreasonable belief could mitigate murder to manslaughter.
 
 
 10
 Improper jury instructions constitute a ground for habeas relief only if the faulty instructions "so infected the entire trial that the resulting conviction violates due process." Prantil, 843 F.2d at 317 (internal quotations omitted). "To warrant habeas relief, the instruction cannot be merely 'undesirable, erroneous, or even universally condemned,' but must violate [due process]." Id. Moreover, "[i]t is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 112 S.Ct. 475, 482, 116 L.Ed.2d 385, 399 (1991) (internal quotations omitted).
 
 
 11
 Even though the trial court erred in failing specifically to instruct the jury that an act committed in self-defense (honest but unreasonable belief), would constitute manslaughter, the error was not so egregious as to violate fundamental fairness. See id. The trial court instructed the jury twice regarding the concept of self-defense. First, it specifically instructed the jury that an "honest but unreasonable belief" was a defense to murder because a person who kills with such a belief cannot possess the "malice" state of mind required to constitute murder. Thus, the jury was instructed that if it found Elmore acted with such an honest belief in the need to defend himself, he could not be guilty of murder. Second, the trial court also instructed the jury that the Government had the burden to prove beyond a reasonable doubt that the act causing death was not done in an honest, though unreasonable, belief in the need to defend oneself from imminent death or bodily injury.
 
 
 12
 Moreover, we conclude that the error did not infect the entire trial process. During closing arguments, both defense counsel and the prosecutor stated that an honest but unreasonable belief could mitigate murder to manslaughter.
 
 2. Voluntary Intoxication
 
 13
 Elmore also contends that the trial court erred because when it instructed the jury on the effect of voluntary intoxication, it failed to distinguish between general and specific intent crimes. Thus, he claims, the jury was misled into thinking that voluntary intoxication was not a defense to first degree murder, a specific intent crime.
 
 
 14
 Because Elmore was accused of both general and specific intent crimes, the trial court issued a general voluntary intoxication instruction informing the jury that voluntary intoxication is not a defense to "all of the crimes I am about to describe to you." The trial court then instructed the jury that it could consider the defendant's state of intoxication in determining whether he had formed the requisite specific intent to kill. The instruction is somewhat misleading because it failed to distinguish between specific and general intent crimes. It neither specifically limited the general voluntary intoxication instruction to general intent crimes, nor stated its inapplicability to specific intent crimes. It was also deficient because it suggested that evidence of intoxication is only a defense to the element of malice, as opposed to indicating that it constitutes a defense to premeditation and deliberation as well. However, given the overall charge to the jury, we conclude that these deficiencies do not require habeas relief.
 
 
 15
 First, the instruction relating to the effect of intoxication on first degree murder followed the general intoxication instruction, thereby indicating that application of the intoxication defense to first degree murder is an exception to the general rule precluding the defense. Second, prior to receiving the intoxication instructions, the jury had been instructed that in order to constitute first degree murder, it must find that the defendant acted with malice and that the act was deliberate and premeditated. Finally, during closing arguments, both defense counsel and the prosecutor stated that although voluntary intoxication does not generally relieve someone of criminal responsibility, it can be considered in determining whether a defendant possessed the requisite mental state for murder.
 
 
 16
 Therefore, Elmore has failed to demonstrate that these erroneous instructions so infected his trial that the resulting conviction violates due process. See Prantil, 843 F.2d at 317. Because the overall charge to the jury appropriately instructed the jury on the law, and because the improper instructions did not infect the entire trial process, we conclude there was not a reasonable likelihood that the jury applied the instructions in such a way that it violated due process. See Estelle, 112 S.Ct. at 482, 116 L.Ed.2d at 399.
 
 C. Sufficiency of Evidence
 
 17
 Finally, Elmore contends that there was insufficient evidence of deliberation and premeditation to support his conviction for first degree murder. We reject this contention.
 
 
 18
 We review sufficiency of evidence claims to determine whether, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (internal quotations omitted).
 
 
 19
 The California Supreme Court has held that there are three basic categories of evidence which are sufficient to sustain a finding of premeditation and deliberation: (1) planning activity; (2) motive; and (3) particular and exacting manner the killing. People v. Anderson, 447 P.2d 942, 949 (Cal.1968). Evidence of all three types will sustain a verdict. Id. If there is not evidence of all three categories, a first degree murder conviction requires (i) extremely strong evidence of planning activity; (ii) evidence of motive and planning; or (iii) evidence of motive and manner of killing. See id.
 
 
 20
 In the present case, there was evidence of both motive and preconceived design. Evidence at trial established that Elmore and his victim, Teresa Carter, had started fighting around 6 p.m. when Elmore had not returned home for dinner. The fighting increased when he finally returned home five hours later and Carter accused him of misspending money, using drugs and seeing other women. A rational jury could conclude that Elmore had a motive to kill Carter in that he resented both the domestic demands being placed upon him and what he perceived as unfair accusations. The law does not require that the defendant have a "rational" motive for killing. See People v. Lunafelix, 168 Cal.App.3d 97, 102 (1985) ("Anger at the way the victim talked to him or any motive, shallow and distorted but, to the perpetrator, genuine may be sufficient." (internal quotations and citations omitted)).
 
 
 21
 There was also evidence of a preconceived design. The killing occurred in the bedroom with a kitchen knife, an instrument not ordinarily kept in a bedroom. Additionally, the evidence at trial established that the killing occurred several hours after Elmore had returned home, indicating that he was waiting until Carter was asleep so that she would be less likely to make noises of protest while being attacked. Carter was also found with a pillow covering her head, suggesting that Elmore had attempted to muffle sounds while killing her. Finally, wounds were inflicted near the vital organs, which indicates an effort to place them where they would be fatal.
 
 
 22
 Upon drawing all reasonable inferences from the facts presented, a jury could have concluded that the killing was more than a rash and impulsive act and that it constituted first degree murder. Therefore, after reviewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found that the killing was deliberate and premeditated.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3