Filed 9/3/25  P. v. Pacheco CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

CHRISTIAN PACHECO,

    Defendant and Appellant.

E082030

(Super.Ct.No. INF1700565)

OPINION

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Affirmed as modified.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Christian Pacheco murdered his girlfriend, Elilia Valdez (the victim), by stabbing her multiple times in the back of the head and neck. Before he was arrested, defendant burned down the victim's trailer, ran another vehicle off the roadway, and decapitated a chihuahua puppy in front of family members. On appeal, defendant concedes the evidence admitted at his trial supports a conviction for second degree murder but challenges the sufficiency of the evidence of premeditation and deliberation to support the jury's verdict of first degree murder. In addition, defendant contends the trial court erred by imposing a full one-year term for a weapon enhancement on his conviction for maliciously and intentionally killing an animal.

The People concede the weapon enhancement should have been one-third the term, and request we modify the judgment to reflect an eight-month term for that enhancement. We conclude the record supports the jury's verdict of first degree murder, accept the People's concession regarding the sentence enhancement, and affirm the judgment as modified.[1]

---

[1] Defendant also petitioned this court for a writ of habeas corpus (case No. E085172), which we resolve by separate order.

# I.

## FACTS AND PROCEDURAL BACKGROUND[2]

In March 2017, the victim was 31 years old and lived with her two children in a trailer park in Thermal. She was in a dating relationship with defendant at the time. The victim's car had broken down, so she borrowed her brother's Hyundai to go to work. No one else was permitted to drive the car while the victim borrowed it.

On the night of March 16, 2017, the victim called her cousins for help because defendant had taken her brother's car and would not return it. Three of the victim's cousins drove to her trailer to help her. When they arrived, the victim was waiting outside. The victim was upset, anxious, and worried. As the cousins tried to comfort the victim, defendant drove up in the Hyundai and demanded that the victim get in the car "to talk." The victim got inside the car, and she and defendant began arguing.

As the victim and defendant were inside the car arguing, the victim's cousins worried defendant might try to take the car, so they stood behind the car to block defendant from driving away. Undeterred, defendant put the car in reverse and accelerated toward the cousins and almost hit them. Defendant sped away with the victim still in the passenger seat of the car. The victim's cousins quickly got into their own car and gave chase, but defendant was driving very fast and the cousins soon lost

---

[2] Defendant pleaded not guilty and not guilty by reason of insanity to all charges. He does not challenge the jury's verdict during the sanity phase of his trial that he was sane at the time of the commission of his offenses.

Nor does defendant challenge the evidence to support his convictions for arson, assault with a deadly weapon, and killing an animal. Therefore, we need not recite the facts of those offenses in detail.

sight of him. The cousins returned to the victim's home to watch her young children, who were sleeping inside alone.

Worried about the victim, her cousins kept calling and texting her, but she did not answer or respond. Around 1:40 a.m., the cousins received a text message from the victim's phone. The text message, purportedly from the victim, read: "Hey, sorry about that. I'm okay. It is okay. We are just talking." The cousins could tell the victim did not write the text, and they grew even more worried. They continued to call the victim, but she did not answer. After repeatedly calling her, the victim eventually called back and said, "she was in Indio" and that she was "coming home." They could "hear someone else breathing on the phone." The cousins waited at the victim's home for another two hours, but she never came home.

Defendant drove the victim to a tribal cemetery in a "very isolated" area of Thermal and killed her. Defendant stabbed the victim between four and six times in the back of her head and neck, cutting her vertebral artery in half. One stab wound above her left collar bone was six to eight inches deep and cut her trachea (windpipe) in half. The victim tried to defend herself and suffered several defensive wounds to her hands.

In the hours after the killing, defendant used the victim's ATM card to purchase gasoline and withdraw money from an ATM at a gas station convenience store. Later, he returned to the victim's trailer and set it on fire. Shortly after committing the arson, defendant confronted a tourist who happened to be taking photographs in the area, chased his vehicle on the roadway, and drove him off the road and caused the tourist's vehicle to

4

roll over. Finally, defendant drove to his mother's house and, with a butcher knife he retrieved from the kitchen, decapitated a chihuahua puppy he had with him in the car.

A jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a), count 1; undesignated statutory references are to the Pen. Code), arson of an inhabited dwelling (§ 451, subd. (b), count 2), assault with a deadly weapon, to wit, a motor vehicle (§ 245, subd. (a)(1), count 3), and maliciously and intentional killing an animal (§ 597, subd. (a), count 4). The jury also found true the allegations that defendant personally used a deadly or dangerous weapon (a knife) in the commission of counts 1 and 4 (§ 12022, subd. (b)(1)). The trial court sentenced defendant to state prison for 25 years to life for the murder plus a consecutive determinate term of eight years eight months.

II.

DISCUSSION

A. *Substantial Evidence Supports the Jury's Verdict of First Degree Murder.*

As he did at his trial, defendant concedes the jury heard substantial evidence that he committed murder but challenges the sufficiency of the evidence to support a finding that the killing was premeditated. Viewing the record in the light most favorable to the judgment, as we must, we affirm.

     i.     Standard of Review.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable,

5

credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court ""'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citation.]' [Citation.]" (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*).)

"""'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] "'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"""" [Citation.] When 'there are two possible grounds for the jury's verdict, one unreasonable and the other reasonable, we will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable ground.'" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 277-278.)

"'A reviewing court neither reweighs [the] evidence nor reevaluates a witness's credibility.' [Citation.] Reversal is not warranted 'unless it appears "that upon no

hypothesis whatever is there sufficient substantial evidence to support [the conviction.]"'" (*People v. Thomas* (2023) 14 Cal.5th 327, 378.)  "Given this deferential standard of review, a 'defendant bears an enormous burden in claiming there is insufficient evidence' to support a conviction."  (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1020; accord, *People v. Torres* (2024) 107 Cal.App.5th 513, 532 ["'Defendant bears an "enormous burden."'"].)

        ii.      Applicable Law.

Murder is the unlawful killing of a human being or fetus with malice aforethought. (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188, subd. (a).)  Express malice means "a deliberate intention to unlawfully take away the life of a fellow creature."  (*Id*., subd. (a)(1).)  Malice is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."  (*Id*., subd. (a)(2).)  A "willful, deliberate, and premeditated killing" is first degree murder. (§ 189, subd. (a).)  Absent a finding of special circumstances, first degree murder is punishable by imprisonment for 25 years to life.  (§ 190, subd. (a).)

To prove a killing was willful, deliberate, and premeditated, the prosecutor is not required to prove the defendant "maturely and meaningfully reflected upon the gravity of the defendant's act."  (§ 189, subd. (d).)  "'In this context, "premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action."'"  (*People v. Jurado* (2006) 38 Cal.4th 72, 118.)  "'An

7

intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' [Citation.] The reflection may be arrived at quickly; it need not span a specific or extended period of time." (*People v. Lopez* (2018) 5 Cal.5th 339, 354-355.) "The *extent* of the reflection is key, not its *duration*; thoughts may rapidly follow each other and a cold and calculated judgment to kill may be arrived at very quickly." (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 491-492 (*Pettigrew*), citing *Morales*, *supra*, 10 Cal.5th at p. 88 & *People v. Cage* (2015) 62 Cal.4th 256, 276 (*Cage*).)

With respect to premeditation and deliberation, our Supreme Court has identified three categories of evidence to consider: planning activity, motive, and the manner of the killing. (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27 (*Anderson*).) "'Since *Anderson*, [our Supreme Court has] emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight.'" (*People v. Rivera* (2019) 7 Cal.5th 306, 324; accord, *People v. Brady* (2010) 50 Cal.4th 547, 562 [*Anderson* factors "need not be present in some special combination or afforded special weight, nor are they exhaustive."].)

"These factors are simply a 'framework to assist reviewing courts in assessing whether the evidence supports an inference that the killing resulted from preexisting reflection and weighing of considerations,' and do 'not refashion the elements of first degree murder or alter the substantive law of murder in any way.'" (*People v. Dalton* (2019) 7 Cal.5th 166, 248.) Nonetheless, "[a] first degree murder conviction will be

8

upheld when there is extremely strong evidence of planning, or when there is evidence of motive with evidence of either planning or manner." (*People v. Romero* (2008) 44 Cal.4th 386, 401.)

### a. Planning Activity.

Defendant argues the record contains no evidence he planned to kill the victim "ahead of time." He contends the fact the killing occurred in a secluded place and the other circumstances of the killing do not support an inference of premeditation and deliberation. We are not persuaded.

"'The act of planning—involving deliberation and premeditation—requires nothing more than a "successive thought[] of the mind."'" (*People v. San Nicolas* (2004) 34 Cal.4th 614, 658 [(*San Nicolas*)].) '[P]lanning activity occurring over a short period of time is sufficient to find premeditation.' (*People v. Sanchez* (1995) 12 Cal.4th 1, 34, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) To repeat, what matters here is the extent of the defendant's reflection on his actions, not its *duration*. (*People v. Morales*, *supra*, 10 Cal.5th at p. 88; *People v. Cage*, *supra*, 62 Cal.4th at p. 276.)" (*Pettigrew*, *supra*, 62 Cal.App.5th at p. 493.)

The circumstances of the murder show planning and strongly support the inference of premeditation and deliberation. After taking the victim from her trailer and evading her cousins' attempts to stop him, defendant drove her to a remote and isolated tribal cemetery and killed her there. From the fact the killing took place in an isolated location—where the victim was more vulnerable, and the defendant was able to conceal

9

his actions—a reasonable jury could draw the inference that he planned to kill her. (*People v. Thompson* (2010) 49 Cal.4th 79, 115 [From evidence the defendant convinced the victim to drive "to an isolated area," jury could draw "[a] reasonable inference . . . that defendant had planned to get [the victim] to a remote area where he could carry out the robbery and murder without hindrance and without detection."]; *People v. Hovarter* (2008) 44 Cal.4th 983, 1019 ["Defendant's choice . . . of committing his crimes in isolated or secluded settings further suggests a premeditated plan designed to avoid detection."]; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1237 ["Cases indicate that the total vulnerability of the victim and the evidence of a previously selected remote spot for the killing do suggest planning."].)

In addition, obviously defendant was already armed with a knife when he drove the victim to the remote cemetery. "That defendant armed himself prior to the attack 'supports the inference that he planned a violent encounter.'" (*People v. Elliot* (2005) 37 Cal.4th 453, 471; see *People v. Tully* (2012) 54 Cal.4th 952, 1008, fn. 24 ["strong evidence of planning" included "the fact [the defendant] was armed" with a knife before he stabbed and killed the victim during a residential burglary]; *People v. Lee* (2011) 51 Cal.4th 620, 636 ["[D]efendant brought a loaded handgun with him on the night [the victim] was killed, indicating he had considered the possibility of a violent encounter"]; *People v. Steele* (2002) 27 Cal.4th 1230, 1250 ["[T]he jury could infer that defendant carried the fatal knife into the victim's home in his pocket, which makes it 'reasonable to infer that he considered the possibility of homicide from the outset'"].)

Defendant contends that, instead of supporting an inference of premeditation and deliberation, "[t]he evidence points to a psychotic break at the time of the killing and not a preplanned intent to kill [the victim]." "But we may not reweigh the evidence or reverse the jury's verdict merely because a reasonable jury might have drawn the inferences suggested by defendant." (*Pettigrew*, *supra*, 62 Cal.App.5th at p. 493.) A reasonable jury could have found the killing was the result of a psychotic break, as suggested by defendant. "'But it was permitted to find otherwise.'" (*Ibid*.)

b. Manner of Killing.

Likewise, evidence of the manner of killing was "indicative of premeditation and deliberation." (*People v. Perez* (1992) 2 Cal.4th 1117, 1127 (*Perez*).) Defendant stabbed the victim between four and six times in the back of her head and neck, severing her vertebral artery in half. One stab wound above her left collar bone was six to eight inches deep and cut her trachea (windpipe) in half. The victim also suffered several defensive wounds to her hands.

"A violent and bloody death sustained as a result of multiple stab wounds can be consistent with a finding of premeditation." (*People v. Pride* (1992) 3 Cal.4th 195, 247; see *id*. at p. 248 [jury could reasonably conclude defendant premeditated and deliberated from the fact he stabbed the victim 18 times, all but one of them in the torso]; *Morales*, *supra*, 10 Cal.5th at p. 102 [evidence "victims suffered multiple fatal stab wounds to the neck or chest" was relevant to proving deliberation]; *People v. Booker* (2011) 51 Cal.4th 141, 173 [although defendant claimed he merely "'nicked'" one victim in the neck, "the

11

wounds on her throat indicate she . . . was killed deliberately"]; *People v. Prince* (2007) 40 Cal.4th 1179, 1253 ["clustered stab wounds support an inference of a deliberate killing"]; *San Nicolas*, *supra*, 34 Cal.4th at pp. 658-659 ["sheer number" of stab wounds to victim, "many of which individually would have been fatal," supported inference of premeditation].)

Defendant responds that the mere fact of a brutal killing does not support an inference of a premeditated and deliberate killing, and once more he suggests "[t]he evidence indicated a rash and brutal killing fueled by a psychotic break rather than a cold, calculated execution." To repeat, we may not reweigh the evidence. A reasonable jury might have concluded the killing was rash and not the result of premeditation, but, based on the evidence in the record, defendant's jury was not required to draw that inference. (*Pettigrew*, *supra*, 62 Cal.App.5th at p. 493.)

Last, the jury could consider defendant's actions after the killing. (*People v. Disa* (2016) 1 Cal.App.5th 654, 667.) "[W]hile not sufficient in themselves to establish premeditation and deliberation," defendant's post-killing actions "are facts which a jury could reasonably consider in relation to the manner of killing." (*Perez*, *supra*, 2 Cal.4th at p. 1128.) After killing the victim, defendant used her ATM card to purchase gasoline and withdraw money from an ATM at a gas station convenience store. Later, he returned to the victim's trailer and set it on fire. From that evidence, a jury could reasonably infer defendant "was not possessed by a sudden rage" when he killed her but acted in a premeditated fashion. (*Cage*, *supra*, 62 Cal.4th at p. 277.)

12

### c. Motive.

"'Motive is the *emotional* urge that induces a particular act.' (1 Witkin, Cal. Criminal Law (4th ed. 2012) Elements, § 4, p. 263, italics added ['(e.g., need, avarice, revenge, jealousy, fear)'].) '"[T]he law does not require that a first degree murderer have a 'rational' motive for killing."' (*People v. Jackson* (1989) 49 Cal.3d 1170, 1200.) 'Anger at the way the victim talked to [the defendant] [citation] or any motive, "shallow and distorted but, to the perpetrator, genuine[,]" may be sufficient.' (*People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102.) '[T]he incomprehensibility of the motive does not mean that the jury could not reasonably infer that the defendant entertained and acted on it.' (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1238.)" (*Pettigrew*, *supra*, 62 Cal.App.5th at p. 495.) The fact a killing "appears to have been senseless and irrational" does not prevent a jury from reasonably concluding the defendant had a motive to kill and deliberately acted upon it. (*Ibid*.)

To support a verdict of first degree murder, the motive must "'support an inference that the killing was the result of a "pre-existing reflection" and "careful thought and weighing of considerations" *rather than* "mere unconsidered or rash impulse hastily executed."'" (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1268, quoting *Anderson*, *supra*, 70 Cal.2d at p. 27.) Without more, evidence the defendant was in a "'bad mood'" or angry with the victim will not support a finding of premeditation and deliberation. (*Boatman*, at p. 1268.)

The People argue the evidence shows defendant had a motive to kill the victim because she tried to prevent him from using her brother's vehicle and, perhaps, because he wanted to steal money from her. Defendant contends that evidence he was angry with the victim was not enough to establish a motive for purposes of first degree murder. Because the evidence of planning and the manner of the killing strongly support the inference of premeditation and deliberation, we need not decide whether the evidence of a motive also supports that inference. (See, e.g., *People v. Barrett* (2025) 17 Cal.5th 897, 966, quoting *People v. Hawkins* (1995) 10 Cal.4th 920, 957 ["[M]otive 'evidence is not indispensable to proving premeditation when the manner-of-killing evidence is so compelling'"].)

In sum, we conclude the record contains substantial evidence of premeditation and deliberation.

B.      *The Judgment Is Modified to Correct the Sentence on the Enhancement for Personal Use of a Firearm on Count 4.*

The trial court deemed count 2 (arson) to be the principal count and sentenced defendant on count 4 (killing an animal) to a consecutive term of eight months in prison (one-third the middle term of two years). (§§ 597, subd. (d), 1170, subd. (h), 1170.1, subd. (a).) For the true finding that defendant personally used a knife during the commission of count 4, the trial court imposed a full one-year consecutive prison term. (§ 12022, subd. (a)(1).) The parties agree the sentence on the enhancement was unauthorized and must be corrected, as do we.

14

Absent exceptions not applicable here, the consecutive term for a subordinate offense is one-third the middle term for the offense plus one-third the term for any "specific enhancements" applicable to that subordinate offense.  (§ 1170.1, subd. (a).)  Status enhancements, which relate to the status of the offender, are not subject to the one-third limitation of section 1170.1, subdivision (a).  (See *People v. Beard* (2012) 207 Cal.App.4th 936, 941-942.)  The enhancement in section 12022, subdivision (a), for personal use of a deadly or dangerous weapon "relates to the circumstances of the crime" and is expressly designated a "specific enhancement" subject to the one-third rule.  (§ 1170.11.)  In other words, the sentence for the enhancement on count 4 must be one-third the one-year term, or four months.  (§ 12022, subd. (a)(1).)  Therefore, we will modify the judgment to reflect a four-month term for the enhancement on count 4 and a total determinate prison term of eight years.  (§ 1260 [reviewing court may modify the judgment].)

III.

DISPOSITION

The judgment is modified to reflect a four-month term of imprisonment on the enhancement for count 4, for a total determinate term of eight years in state prison. The clerk of the superior court is directed to correct the minutes of sentencing and forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.

As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
_____
Acting P. J.

We concur:

FIELDS
_____
J.

MENETREZ
_____
J.

16