Filed 2/18/26  P. v. Johnson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GLEN RALPH JOHNSON,<br><br>    Defendant and Appellant. | G063680<br><br>(Super. Ct. No. 21NF2479)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge. Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Glen Ralph Johnson appeals from a judgment after a jury found him guilty of first degree murder. He contends the trial court erred in denying his motion for a judgment of acquittal under Penal Code section 1118.1 (all undesignated statutory references are to this code). We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

One night, at around 9:20 p.m., a pickup truck parked on a street near an alley, around the corner from a donut shop. Johnson, the driver, exited the truck. He grabbed his black jacket inside the truck, put it on, and started walking down the street toward an intersection.

A car came around the corner and stopped in the intersection. The driver of the car, Tyrone Portis, honked and said, "'Hey, man,'" in a friendly manner as if he and Johnson knew each other. Johnson walked "normally" to Portis's car. Johnson appeared to have nothing in his hands at that time. Portis exited his car and stood next to it. Johnson got "very close" to Portis, and they appeared to greet each other amicably. Johnson then pointed a handgun at Portis and shot him in the chest, with the barrel of the handgun inches away. Witnesses heard one or two gunshots. Portis fell to the ground within seconds. One witness saw Johnson placing his left arm on Portis's shoulder as if to assist Portis to the ground.

Johnson put the handgun in his jacket and ran to his truck. He appeared to be panicking. He threw the handgun on his truck bed, entered his truck, and sped away. A witness took a video, capturing the truck's license plate and Johnson speeding away, and later shared the video with law enforcement. The video, along with surveillance video from others, was played to the jury.

2

Portis's friend, L.H., heard the gunshot. Roughly 20 minutes earlier, she had been outside the donut shop and saw Portis there too. She found Portis lying facedown in the street struggling to breathe.

Soon after the shooting, law enforcement arrived at the scene. Portis did not have a pulse and was not breathing. Law enforcement found a gunshot wound to the center of Portis's chest and initiated CPR. While searching the scene, they did not find any firearms, but they found one expended nine-millimeter cartridge casing.

Meanwhile, Johnson went to his friend Q.T.'s house. Q.T. was not home at the time, but Johnson waited for him to come home. After Q.T. arrived at his house with M.N., who also knew Johnson, Johnson approached them at the front door. As they waited for Q.T.'s son to open the front door, M.N. observed Johnson "acting a little bit strange": Johnson was ducking down and looking around as if he "didn't want to be seen." After they went inside, Johnson changed into one of M.N.'s shirts. He also asked Q.T. for a bottle of rubbing alcohol to clean his hands. Johnson shaved his head, albeit his hair was short when he arrived at the house. At some point, Q.T. asked Johnson what had happened. Johnson replied he shot someone. Q.T. asked him "how bad" the shooting was, and he said it was "very bad." Q.T. then asked Johnson to leave.

Law enforcement later connected the truck's license plate to Q.T.'s home address. Q.T. had recently sold the truck to Johnson. Law enforcement asked Q.T. about the ownership of the truck. They also showed him surveillance video and asked if he could identify the person exiting the truck. Q.T. identified the person as Johnson.

Six days after the shooting, law enforcement located Johnson while he was driving his truck. They pulled him over and arrested him. They

searched Johnson's phone and found a picture of a semiautomatic handgun. Law enforcement also searched Johnson's home and found ammunition consistent with a nine-millimeter handgun and a holster that could hold such a gun.

An autopsy confirmed Portis had one gunshot wound with an "entrance defect over the chest" and "an exit defect over his back." The autopsy also showed Portis was shot at a close range, possibly between one and one-half to three feet away depending on the type of firearm, and that he died within minutes from the gunshot wound.

The prosecution filed an amended information, charging Johnson with one count of murder. (§ 187, subd. (a).) The prosecution further alleged three enhancements: one firearm enhancement (§ 12022.53, subd. (d)) and two enhancements for being out on bail at the time of the commission of the murder (§ 12022.1, subd. (b)).

The case proceeded to a jury trial. At the conclusion of the prosecution's case, Johnson moved for a judgment of acquittal under section 1118.1. Johnson argued the evidence did not support a finding of first or second degree murder. The trial court denied the motion, explaining: "[T]here's sufficient evidence to sustain a conviction on appeal on all of the theories, which include first[]degree . . . and second[]degree murder, at this time."

The jury found Johnson guilty of first degree murder. It also found the firearm enhancement to be true. The trial court later found both out-on-bail enhancements to be true. The court sentenced Johnson to prison for 54 years to life. Johnson timely appealed.

4

DISCUSSION

I.

STANDARD OF REVIEW

"On a motion for judgment of acquittal under section 1118.1, the trial court applies the same standard as an appellate court reviewing the sufficiency of the evidence. The court must consider whether there is any substantial evidence of the existence of each element of the offense charged, sufficient for a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." (*People v. Harris* (2008) 43 Cal.4th 1269, 1286.) "'Where the section 1118.1 motion is made at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point.'" (*People v. Cole* (2004) 33 Cal.4th 1158, 1213.)

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

## II.

### SUFFICIENT EVIDENCE SUPPORTS A FINDING OF PREMEDITATED AND DELIBERATE MURDER

Johnson argues the trial court erred in denying the section 1118.1 motion because there was insufficient evidence of premeditated and deliberate murder. "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Generally, first degree murder involves a "willful, deliberate, and premeditated killing." (§ 189, subd. (a).) "'"Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. [Citations.] "The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .'"' [Citation.] In *People v. Anderson* (1968) 70 Cal.2d 15, 26–27 . . . , 'we "identified three categories of evidence relevant to resolving the issue of premeditation and deliberation: planning activity, motive, and manner of killing." [Citation.] "However, these factors are not exclusive, nor are they invariably determinative." [Citation.] '"*Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse."'"' (*People v. Cage* (2015) 62 Cal.4th 256, 276 (*Cage*).)

It is undisputed the prosecution did not present evidence of motive in its case-in-chief. Nonetheless, "any alleged insufficiency in the motive evidence at the time of defendant's motion is not determinative." (*People v. Barrett* (2025) 17 Cal.5th 897, 966.) That leaves us to consider

whether sufficient evidence of planning activity and manner of killing supports a finding of first degree murder. Although these *Anderson* factors guide our analysis, we acknowledge they "are not a definitive statement of the prerequisites for proving premeditation and deliberation in every case." (*People v. Hawkins* (1995) 10 Cal.4th 920, 957, overruled on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 110.)

As for planning activity, the prosecution showed significant evidence of planning by Johnson. Johnson carried a loaded handgun with him the night of the shooting. He parked his truck around the corner from the donut shop where Portis had been 20 minutes before the shooting. When Johnson left his truck, he brought the handgun with him and apparently kept it concealed. (See *Cage, supra*, 62 Cal.4th at p. 276 [finding sufficient evidence of planning where defendant told his neighbors about his desire to confront the victim and concealed his gun prior to the confrontation].) After Portis drove into the intersection and called out, "'Hey, man,'" Johnson walked "normally" to Portis, who was unarmed, and they appeared to exchange an amicable greeting. Then, in contradiction to their friendliness, Johnson shot Portis in the chest at a close range without warning. The trial court could have reasonably deduced Johnson's hidden handgun, gait, and friendliness showed he wanted to kill Portis by taking him by surprise. (See *People v. Jablonski* (2006) 37 Cal.4th 774, 821 ["how [defendant] planned to approach the victims (by stealth as opposed to open confrontation) . . . w[as] relevant to premeditation"].)

After fleeing the scene, Johnson altered his appearance by changing his shirt and cutting his hair. This conduct, in conjunction with the other evidence, tends to show premeditation and deliberation as it conflicts with a state of mind that would have resulted in an unplanned, rash, and

7

impulsive killing. (See *People v. Moon* (2005) 37 Cal.4th 1, 27–28 [evidence of flight can show premeditation and deliberation]; *People v. Perez* (1992) 2 Cal.4th 1117, 1128 ["the conduct of defendant *after* the stabbing, such as the search of dresser drawers, jewelry boxes, kitchen drawers and the changing of a Band-Aid on his bloody hand, would appear to be inconsistent with a state of mind that would have produced a rash, impulsive killing"].)

The trial court also could have reasonably inferred premeditation and deliberation from the manner of killing. A close range gunshot to a vital area of the body "'is arguably sufficiently "particular and exacting" to permit an inference that defendant was acting according to a preconceived design.'" (*Cage, supra*, 62 Cal.4th at p. 277; see *People v. Koontz* (2002) 27 Cal.4th 1041, 1082 ["firing a shot at a vital area of the body at close range" indicated premeditation and deliberation].) The lack of provocation also supports a finding of first degree murder. (See *People v. Harris, supra*, 43 Cal.4th at p. 1287 [finding sufficient evidence of first degree murder where "defendant was armed with a knife and stabbed [victim] without provocation directly in the heart"]; *People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102 ["The utter lack of provocation by the victim is a strong factor supporting the conclusion that appellant's attack was deliberately and reflectively conceived in advance"].) Here, the prosecution showed Johnson shot Portis in a vulnerable area, his chest, with the bullet hitting his heart, aorta, lung, and spine, at a close range without provocation.

Johnson argues the prosecution presented no evidence of planning activity. He asserts nothing about his encounter with Portis suggests he had a plan. He posits his panicking after the shooting indicated he had no plan and questions how a murder in front of several witnesses could imply planning. Additionally, Johnson contends the manner of killing

8

was insufficient to show premeditated and deliberate murder. He asserts nothing shows the killing was a methodical execution and that a shot to the chest at a close range does not indicate deliberation. But "[d]efendant's view of the record is not the only possible, or even most likely, view of the evidence." (*Cage, supra*, 62 Cal.4th at p. 276.) "[T]he fact that the evidence might also be reconciled with a contrary conclusion as to premeditation and deliberation does not render it insufficient to overcome a motion for acquittal." (*People v. Barret, supra*, 17 Cal.5th at p. 966.)

Therefore, we conclude sufficient evidence supports a jury finding that Johnson committed premeditated and deliberate murder.

DISPOSITION

The judgment is affirmed.

MOTOIKE, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.

9