Filed 2/10/26  P. v. Vargas CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFREDO VARGAS,<br><br>    Defendant and Appellant. | B338592<br><br>(Los Angeles County<br> Super. Ct. No. BA486649) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Stennis, Judge.  Affirmed.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles G. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Blythe J. Leszkay and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Alfredo Vargas of numerous crimes, including on two counts of attempted willful, deliberate, and premeditated murder. Vargas argues substantial evidence did not support the jury's findings of deliberation and premeditation. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Vargas Fires Multiple Shots at Two People in a Car*

On January 27, 2020, at 11:00 p.m., Maria Ramirez drove to the home of her boyfriend, Issac Cruz. Cruz got in the car and hugged Ramirez. A car pulled up next to Ramirez's car, blocking the left corner of her car. Vargas got out of the passenger side door of the car and looked inside the front windshield of Ramirez's car. Vargas walked to the driver's side window, "reached into his waistband, and flashed a gun." By the time Vargas got to the driver's side of the car, he was holding the gun and pointing it at Ramirez. Vargas came forward until he was a foot and a half to two feet from Ramirez and stuck the gun in her face. Neither Ramirez nor Cruz had ever seen a gun that close up before.

Cruz said, "No, no, no," and Ramirez drove away. Ramirez and Cruz heard approximately five to 10 gunshots and the sound of bullets hitting the car. When Ramirez looked back, Vargas was still in the middle of the street. Ramirez made a right turn at the next corner and escaped.

Ramirez drove to a police station, where she and Cruz discovered the car's back windshield was shattered, the rear

taillight was shot out, and there were bullet holes in the trunk, the passenger side door, the side view mirror, and the back seatbelt.  A detective later found a bullet in the back seat.

Neither Ramirez nor Cruz had ever seen Vargas before. They both identified Vargas as the shooter in a six-pack photographic lineup and in court.  Ramirez testified she remembered Vargas's face "clearly."

B. *A Jury Convicts Vargas on Two Counts of Attempted Murder and of Numerous Other Crimes*

The People charged Vargas with a dozen crimes committed on January 27, 2020 and March 2, 2020.  Two of those crimes, the only ones at issue in this appeal, were the attempted willful, deliberate, and premeditated murders of Ramirez and Cruz.  The jury convicted Vargas on all counts that remained at trial, including the attempted murder counts.  The jury also found true allegations that the attempted murders were willful, deliberate, and premeditated and that Vargas personally used a firearm, within the meaning of Penal Code section 12022.5, subdivisions (a) and (d).  The court found Vargas had a prior serious or violent felony conviction, within the meaning of the three strikes law.

The trial court denied Vargas's motion for a new trial on the two attempted murder convictions and his request to strike the finding of premeditation and deliberation.  The court stated Vargas fired, not just "a couple of times as the car drove away," but 10 times, which was why the court believed the jury found Vargas committed the attempted murders "with premeditation and deliberation."  The court also denied Vargas's motion under

3

*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to strike his prior serious or violent felony conviction.

The court sentenced Vargas on his attempted murder convictions to concurrent terms of life in prison with a minimum parole eligibility of 14 years (seven years, doubled under the three strikes law), plus three years for the firearm enhancement. The court imposed various terms on Vargas's other convictions. Vargas timely appealed.

## DISCUSSION

Vargas does not challenge the jury's finding he attempted to murder Ramirez and Cruz. He argues only substantial evidence did not support the jury's finding he attempted to murder them deliberately and with premeditation. Substantial evidence, however, supported the jury's findings.

### A.    *Applicable Law and Standard of Review*

"An attempted murder is premeditated and deliberate if it occurs as the result of preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 121, internal quotation marks omitted; see *In re Lopez* (2023) 14 Cal.5th 562, 580.) "In general, attempted murder is punishable by imprisonment for a term of five, seven, or nine years. [Citation.] However, if either the defendant or an accomplice formed the intent to kill with premeditation and deliberation, punishment for the attempted murder is increased to life imprisonment with possibility of parole." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654; see § 664, subd. (a).) Section 664, subdivision (a), "does not establish a greater degree

of attempted murder but, rather, sets forth a penalty provision prescribing an increased sentence (a greater base term) to be imposed upon a defendant's conviction of attempted murder when the additional specified circumstances are found true by the trier of fact." (*People v. Bright* (1996) 12 Cal.4th 652, 669, disapproved on another ground in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6; see *People v. Favor* (2012) 54 Cal.4th 868, 877; *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1339; *De La Cerda v. Superior Court* (2022) 75 Cal.App.5th 40, 55.)

In *People v. Anderson* (1968) 70 Cal.2d 15 the Supreme Court "identified 'three basic categories' of evidence [the] court has generally found sufficient to sustain a finding of premeditation and deliberation: (1) planning activity, or 'facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing'; (2) motive, or 'facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim'; and (3) manner of killing, or 'facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design" to take his victim's life in a particular way for a "reason."'" (*People v. Morales* (2020) 10 Cal.5th 76, 88-89; see *Anderson*, at pp. 26-27; *People v. Serrano*, *supra*, 100 Cal.App.5th at p. 1333.)

The categories of evidence identified in *Anderson* "are not exclusive or determinative—they are merely intended to guide a reviewing court's assessment of whether the evidence supports a reasonable inference that the killing was the result of the

5

defendant's preexisting reflection and not the result of an unconsidered or rash impulse." (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 492; see *People v. Morales*, *supra*, 10 Cal.5th at p. 89 [the categories in *Anderson* """are descriptive and neither normative nor exhaustive, and . . . reviewing courts need not accord them any particular weight""].) "*Anderson* provides 'a framework to aid in appellate review,' but it does not 'define the elements of first degree murder or alter the substantive law of murder in any way.'" (*Morales*, at p. 89; see *People v. Cage* (2015) 62 Cal.4th 256, 276.)

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Hin* (2025) 17 Cal.5th 401, 451; see *People v. Ellis* (2025) 108 Cal.App.5th 590, 596.) "In so doing, a reviewing court """presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."""" (*People v. Morales*, *supra*, 10 Cal.5th at p. 88; see *Ellis*, at p. 596.) We do not """reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The [judgment] should "be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the [fact finder] might have reached a different result had it believed other evidence."""" (*People v. Helzer* (2024) 15 Cal.5th 622, 646; see *Ellis*, at pp. 596-597; see also *People v. Manriquez* (2005) 37 Cal.4th 547, 577 [reversal for lack of substantial evidence "is unwarranted unless it appears that upon

6

no hypothesis whatever is there sufficient substantial evidence to support [the conviction]," internal quotation marks omitted].)

> B. *Substantial Evidence Supported the Jury's Finding of Premeditation and Deliberation*

>> 1. *Planning*

Vargas argues there was no "'planning evidence whatsoever.'" To be sure, there was no direct evidence of what Vargas did or what plans he made prior to the shooting. But there was circumstantial evidence of planning. (See *People v. Navarro* (2021) 12 Cal.5th 285, 339 ["'"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence."'"]; *People v. Grandberry* (2025) 116 Cal.App.5th 934, 946 [same].)

For example, he brought a loaded firearm to the attack on Ramirez and Cruz and did not hesitate to use it. Bringing a weapon to the crime scene indicates preparation and planning. (See *People v. Potts* (2019) 6 Cal.5th 1012, 1027 [arriving with a weapon suggests murders were planned]; *People v. Lee* (2011) 51 Cal.4th 620, 636 [decision to bring a loaded gun indicates planning]; *People v. Elliot* (2005) 37 Cal.4th 453, 471 ["[t]hat defendant armed himself prior to the attack 'supports the inference that he planned a violent encounter'"]; *People v. Cardenas, supra,* 53 Cal.App.5th at p. 122 [bringing a loaded weapon to the scene is evidence of preparing and planning for a violent encounter].)

And planning can occur quickly. (See *People v. Sanchez* (1995) 12 Cal.4th 1, 34 ["planning activity occurring over a short period of time is sufficient to find premeditation"], disapproved on

another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Pettigrew*, *supra*, 62 Cal.App.5th at p. 493 [same]; *People v. San Nicolas* (2004) 34 Cal.4th 614, 658 ["[t]he act of planning—involving deliberation and premeditation— requires nothing more than a 'successive thought[ ] of the mind'"].) "The process of premeditation and deliberation does not require any extended period of time. The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." (*People v. Houston* (2012) 54 Cal.4th 1186, 1216, internal quotation marks omitted.)

Vargas had time to consider and reflect on whether to shoot at and kill Ramirez and Cruz in their car. As the People point out, when Ramirez drove away Vargas "could have returned to his car and ended the confrontation." He did not. Between the first and second shot Vargas could have decided not to keep shooting at his fleeing victims, but he chose to keep shooting. Between his second and third shots Vargas could have realized Ramirez and Cruz were getting farther away and it was best to let the incident come to an end, but he decided to continue. Between the third and fourth shots Vargas had time to consider whether continuing to shoot at Ramirez's car was worth the risk, but he decided it was. And between and during the fifth, sixth, seventh, eighth, ninth, and tenth shots Vargas had time to contemplate whether the diminishing prospects of killing his intended victims weighed against firing additional shots, and he came out in favor of continuing to try to kill them. Though an extended period of time is not required for deliberation and premeditation (*People v. Ghobrial* (2018) 5 Cal.5th 250, 278),

8

Vargas had time to weigh his options.  And after weighing the pros and cons, he decided to keep trying to kill Ramirez and Cruz.

Finally, Ramirez and Cruz did nothing to provoke Vargas.  They were just sitting in the car greeting each other when Vargas brandished his gun, pulled it out of his waistband, and fired at them as Ramirez drove away.  Such lack of provocation also indicates planning.  (*People v. Miller* (1990) 50 Cal.3d 954, 993; see *People v. Miranda* (1987) 44 Cal.3d 57, 87 ["lack of provocation by the victim leads to an inference that an attack was the result of a deliberate plan rather than a 'rash explosion of violence'"]; *People v. Isby* (1947) 30 Cal.2d 879, 888 ["that the attack was unprovoked and that the deceased apparently was unarmed at the time . . . furnished ample justification for the indulgence by the jury in the inference that defendants were possessed of a willful, deliberate and premeditated purpose to kill the deceased"]; *People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102 ["The utter lack of provocation by the victim is a strong factor supporting the conclusion that [the defendant's] attack was deliberately and reflectively conceived in advance."].)

2.      *Manner*

The manner of Vargas's attempted murder of Ramirez and Cruz supported the jury's finding of premeditation and deliberation.  Vargas was less than two feet away from Ramirez when he pulled out his gun.  Though Ramirez was able to drive away from her assailant, Vargas was initially very close to his victims who, as stated, did nothing to confront or provoke Vargas.  (See *People v. Steskal* (2021) 11 Cal.5th 332, 356 ["evidence of the volume and aim of shots directed at" the victim from close range supported "the conclusion that the killing was deliberate"]; *People*

*v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295 ["manner of killing—a close-range shooting without any provocation or evidence of a struggle—additionally supports an inference of premeditation and deliberation"].) And firing five to 10 shots at unarmed victims further indicated premeditation and deliberation. (See *People v. Silva* (2001) 25 Cal.4th 345, 369 [firing multiple gunshots at "an unarmed and defenseless victim who posed no threat to defendant . . . is entirely consistent with a premeditated and deliberate murder"]; *People v. Son* (2020) 56 Cal.App.5th 689, 692 ["the number of shots fired can indicate premeditation"]; *People v. Francisco* (1994) 22 Cal.App.4th 1180, 1192 [evidence of five or six shots fired at close range supported an inference of premeditation and deliberation]; see also *People v. Boyd* (1985) 38 Cal.3d 762, 770 [firing more than five shots at a fleeing victim was substantial evidence to justify an instruction on premeditation].) Finally, Vargas's actions—from walking up to Ramirez's car, looking inside, flashing his gun, pointing the gun at her, and remaining in the middle of the road as he fired each shot—reflected that Vargas carried out his plan to kill Ramirez and Cruz calmly and coolly, additional indicia of premeditation and deliberation. (See *People v. Marks* (2003) 31 Cal.4th 197, 232 ["The 'calm,' 'cool,' and 'focused' manner of a shooting also supports the finding of premeditation and deliberation."].)

###    3.    *Motive*

Vargas argues there was no evidence of a motive or prior relationship between him and his victims. Maybe not. The People suggest that, when "Ramirez refused to be cowered into submission and instead sped away, the jury could have

10

reasonably concluded that this sign of defiance provided a motive for appellant to kill them both," but that stretches the motive consideration pretty thin.  Motive, however, is not required. (*People v. Jones* (2024) 105 Cal.App.5th 83, 99.)  The law "does not require that a first degree murderer have a 'rational' motive for killing.  Anger at the way the victim talked to him [citation] or any motive, 'shallow and distorted but, to the perpetrator, genuine' may be sufficient." (*People v. Lunafelix, supra,* 168 Cal.App.3d at p. 102.)  As the Supreme Court has emphasized, California law "has '"never required the prosecution to prove a specific motive before affirming a judgment, even one of first degree murder.  A senseless, random, but premeditated, killing supports a verdict of first degree murder."'" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 421.)  And Vargas's attempt to murder an innocent couple was nothing if not senseless and random.

## DISPOSITION

The judgment is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.